IN THE CIRCUIT COURT OF THE 13TH
JUDICIAL CIRCUIT, IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA

JULIA BISHOP and KAREN JOHNSON,     CASE NO.
as Co-Personal Representatives of the
ESTATE OF CHARLES BISHOP,
deceased,

     Plaintiffs,

v.

HOFFMAN-LA ROCHE, INC., and
ROCHE LABORATORIES, INC.,
a member of the ROCHE Group,

     Defendants.
_____/

FILED 8/21/02
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

8:02-CV-1533-T-30TBM

DIVISION E

## COMPLAINT AND JURY DEMAND

COME NOW the Plaintiffs, JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP BISHOP, deceased, (hereafter referred to as "BISHOP" or "Plaintiffs"), by and through the undersigned attorneys, and sue the Defendants, HOFFMAN-LA ROCHE, INC. and ROCHE LABORATORIES, INC.,

1.     This is an action for damages in excess of Fifteen Thousand ($15,000.00) Dollars brought pursuant to the Florida Wrongful Death Act as codified and Florida Statutes §768.16 through §768.27.

## PARTIES

**Plaintiffs:**

2.  At all times material hereto, the Plaintiffs, JULIA BISHOP and KAREN JOHNSON will be the duly appointed Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, deceased.

3.  At all times material hereto, the survivor as defined by the Florida Wrongful Death Act is JULIA BISHOP, natural mother of the decedent.

4.  The decedent, CHARLES BISHOP, at the time of his death, was age 15 and a resident and citizen of Pinellas County, Florida.

**Defendants:**

5.  At all times material hereto, the Plaintiffs are informed and believe that the Defendant, HOFFMAN-LA ROCHE, INC., is a corporation organized and existing by virtue of the laws of the State of New Jersey, with is principal place of business in Nutley, New Jersey.

6.  At all times relevant hereto, the Defendant, HOFFMAN-LA ROCHE, INC., formulated, designed, manufactured, labeled, promoted, marketed, distributed, sold, and/or placed into the stream of interstate trade and commerce certain pharmaceuticals with the reasonable expectation that the pharmaceuticals would be used in the State of Florida. Said pharmaceuticals were intended to and did reach ultimate consumers in the State of Florida.

7.  The Plaintiffs are informed and believe that the Defendant, ROCHE LABORATORIES, INC., a member of the ROCHE group, is a corporation organized and existing by virtue of the laws of the State of New Jersey, with its principal place of business in Nutley, New Jersey.

8.  At all times relevant hereto, the Defendant, ROCHE LABORATORIES, INC., formulated, designed, manufactured, labeled, promoted, marketed, distributed, sold, and/or placed into the stream of interstate trade and commerce certain prescription drugs with the reasonable expectation that the drugs would be used in the State of Florida. Said drugs were intended to and did reach ultimate consumers in the State of Florida and caused injuries to Florida residents in the State of Florida.

## GENERAL ALLEGATIONS

9.  The Defendants are manufacturers of various drugs, including a drug known generally as Isotretinion. In the United States the drug is marketed and sold as Accutane, and in other parts of the world, and particularly in the United Kingdom, the same drug is also marketed as Roaccutane. (Isotretinion/Accutane/Roaccutane will be referred to hereafter as "Accutane").

10. Accutane is a retinoid, a specific class of chemicals, and is very similar to Vitamin "A" but is much more powerful and potent.

11. The Defendants, HOFFMAN-LA ROCHE, INC. and ROCHE LABORATORIES, INC., developed Accutane in 1971 but chose not to pursue marketing and distribution of the drug because of the risk of serious birth defects.

12. In June 1982, the Food and Drug Administration (hereinafter "FDA") approved Accutane for the treatment of cases of severe cystic acne which had not responded to other treatments.

13. At the time, it was known to the Defendants that Accutane would cause catastrophic birth defects to a developing fetus, resulting in horrible physical and cognitive damage.

14. Over the years, the Defendants strengthened their warnings concerning the danger of birth defects associated with Accutane. On eight (8) different occasions, the warnings have changed regarding the effects of Accutane on the developing mind and body of a fetus. However, in spite of these warnings, the number of Accutane related birth defects continues to increase.

15. It has also been well-recognized and known to the Defendants that retinoids cause severe psychiatric side effects.

16. It was reported in the literature, and known to Defendants even before Accutane was put on the market, that high doses of retinoids cause psychosis, depression, suicidality, aggressiveness, anger and impulsivity.

17. When the Defendants began marketing Accutane, the Defendants failed to advise the physicians or the public in general of the psychiatric dangers of Accutane, even though this was known or should have been known by Defendants.

18. In 1993, Dr. P. Brevard and two other French dermatologists published a paper which set out details of people whose suicides or attempted suicides were attributed to the use of Accutane.

19. The French publication resulted in a national investigation in France during 1993 and 1994. The results of the investigation were presented at the third forum of the National and Prevential Journals in Motpelier, France on March 14-17, 1996.

20. A French study was funded by ROCHE/HOFFMAN-LA ROCHE and the results were never published.

21. In March, 1997, French health authorities required the ROCHE Defendants to add "suicide" to Accutane's listed side effects.

22. Also in March, 1997, French health authorities required the ROCHE Defendants to warn all users of Accutane/Roaccutane in France that serious side effects, including suicidal ideation and suicidal attempts, could be associated with the use of Accutane/Roaccutane.

23. The investigation conducted by French officials between 1992 through 1994 found a high incidence of suicide among patients using Accutane as compared to other acne medications and that it was a sufficient basis for the country of France to order ROCHE Defendants to strengthen its warnings to include suicide as a possible side effect.

24. Neither ROCHE nor HOFFMAN-LA ROCHE informed physicians, consumers or potential consumers in the United States of America that French health authorities' required suicide and suicide attempt be added to Accutane's listed side effects.

25. In 1999, Dr. T. Middlecoop published a study which showed the number of people prescribed Accutane worldwide was 6 million while the number of people prescribed the other top five acne medications was approximately 300 million.

26. The Middlecoop study concluded that Accutane is 900 times more likely to cause depression in its users than the five other acne medications reviewed.

27. More than 500 adverse reaction reports of suicide, suicide attempt, and suicidal ideation have now been recorded by national and international health agencies for Accutane. This drug has the fourth highest record of adverse drug reaction reports in the United States among the more than 500,000 prescription medications sold in this country.

28. Upon information and belief, prior to the release of this drug the manufacturers of Accutane, ROCHE and/or HOFFMAN-LA ROCHE, predicted as should have been predicted with reasonable certainty, the primary side effects caused by Accutane included psychiatric side effects and horrible physical and cognitive birth defects on young developing mind and body.

29. From the time it was first marketed until now, the Defendants continue to deny or downplay the psychiatric risks associated with Accutane. In fact, as late as 1998, despite the knowledge of the French investigation, the Defendants were warning generally of the psychiatric risks associated with Accutane but at the same time, Defendants were advertising to the public that Accutane could in fact improve psychiatric disorders. This was false and misleading and the falsity or misleading nature was known or should have been known to the Defendants. The FDA has scolded the Defendants concerning this false and misleading advertisement and has forbidden the Defendants from advertising any psychiatric benefit in connection with Accutane.

30. In light of the mounting number of psychiatric side-effects, the Defendants have commissioned flawed and unreliable studies and have used this data as support of their position that Accutane does not cause psychiatric side-effects. These studies are erroneous and misleading. The Defendants continue to use these studies for the erroneous proposition that Accutane does not cause psychiatric side effects.

31. The Defendants, in public and press releases and in statements to doctors, continue to dilute the effect of the warnings by directly communicating to the medical community. The Defendants continue to deny there is a proven correlation between consumption of Accutane and psychiatric side effects on the user..

32. The number of psychiatric problems associated with Accutane continues to increase; individuals are becoming depressed, psychotic and committing suicide on Accutane in the face of the Defendants' denials.

33. Accutane creates severe psychiatric side effects which no warning can prevent. For many, Accutane is unreasonably dangerous and defective and presents an unreasonable risk of harm.

34. CHARLES BISHOP was one of the unfortunate individuals for whom Accutane caused a severe psychotic reaction which resulted in his death.

35. Specifically, CHARLES BISHOP began taking Accutane under the care of a physician in April 2001.

36. At the time CHARLES BISHOP was a healthy fifteen-year-old who was a loving son to his mother and a productive member of society.

37. CHARLES BISHOP was an honor student in honors classes. CHARLES BISHOP, had been accepted for competition in a statewide German academic exercise. CHARLES BISHOP was nominated and selected to be a student ambassador for the United States youth at an upcoming conference in Australia. CHARLES BISHOP was a loyal and patriotic American citizen.

38. On January 5, 2002, the horrible effect and defective condition of Accutane caused CHARLES BISHOP to become severely psychotic where he lost touch with reality. Instead of being the loyal American child that he was, CHARLES BISHOP thought he was some type of terrorist connected in someway with the Taliban and al-Qaeda and that he had a mission to fulfill.

39. Consequently, on the evening of January 5, 2002, CHARLES BISHOP was at his flight school for his normal instruction when he took a Cessna aircraft without authorization and flew the aircraft by himself into the side of the Bank of America Building in Tampa, Hillsborough County, Florida. Tragically, as a result of the Accutane, CHARLES BISHOP, at the time, thought he was on a suicide mission for Osama bin Laden, that terrorist despised and held disreputable by all peace loving people. The intentional crash killed CHARLES BISHOP.

40. It is without dispute that CHARLES BISHOP was not a terrorist, was not associated with Osama bin Laden or any terrorist activities but was, prior to the use of Accutane, a loyal and faithful American who loved his country and the freedom and opportunities offered in a free society.

41. As a result of the Defendants' negligence, CHARLES BISHOP died as a result of an intentional act on January 5, 2002.

42. As a result of the consumption of Accutane, CHARLES BISHOP committed a public act of self-destruction which brought unwanted public criticism to the memory of a child who was an honor student, dreamed of attending the Air Force Academy, and was patriotic.

43. As a result of the negligence of the Defendants and by virtue of the defective nature of their product, the Plaintiff, JULIA BISHOP, has been deprived of her only son, CHARLES BISHOP.

## COUNT I – WRONGFUL DEATH – NEGLIGENCE

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through and including 43 above as if set forth in full, and further state:

44. Upon information and belief, Defendants, ROCHE and HOFFMAN-LA ROCHE manufactured unsafe pharmaceutical products, used substandard warnings and violated safety standards in its marketing, sale and distribution of Accutane.

45. Upon information and belief, proper safety precautions and safeguards would have imposed no undue financial or administrative burden on the Defendants ROCHE and HOFFMAN-LA ROCHE.

46. The Plaintiffs are informed and believe that the Defendants were negligent in all of the following particulars:

    a. In manufacturing a drug for consumption which Defendant knew or should have known could cause depression, suicidal ideation, suicide attempt, or completed suicide and psychosis in a segment of the population who consumed the drug;

    b. In failing to adequately test the drug to determine whether or not the drug had dangerous propensities or for whom it might present a danger;

    c. In failing to act on reports of depression, suicidal ideation, suicide attempt and suicide and psychosis occurring in connection with the use of the drug during the pre-marketing clinical trials and as adverse events occurring after approval of the drug;

    d. In failing to adequately warn the public in general and the Plaintiff in particular that Accutane might cause sudden and immediate depression, suicidal ideation, suicide attempt, and suicide and psychosis in certain individuals using the drug;

    e. In marketing the drug to the public in a manner which created the impression that Accutane relieved depression, when in fact, Defendant knew it might cause depression, suicidal ideation, suicide attempt, or suicide and psychosis and was, in fact, being required to advise physicians of such potential problems with the drug;

    f. In failing to give adequate warnings of the hazards associated with their product;

    g. In failing to label their product properly;

    h. In failing to warn persons using Accutane of all foreseeable complications of using this product, including, but not limited to sudden and immediate psychosis, severe depression, suicidal ideation, suicide attempt and suicide;

    i. In failing to adequately warn physicians of the hazards associated with the product;

    j. In undermining the warnings to physicians and funding, relying upon, promoting, and distributing flawed studies funded by Defendants;

    k. In failing to train physicians in the appropriate uses and indications of their product to identify and/or prevent known side effects;

  l. In manufacturing, labeling, marketing, promoting, and selling of a product which they either knew or should have known was unreasonably unsafe;

  m. In failing to prevent their sales agents from marketing Accutane to physicians and pharmacies as safe, although knowing that the drug was dangerous;

  n. In failing to exercise the degree of care and caution which a reasonable and prudent pharmaceutical entity would have exercised under the same and similar conditions; and

  o. In failing to institute policies and procedures to prevent the type of injury suffered by the decedent.

47. As a direct, proximate, and foreseeable result of the negligence of the Defendants as aforestated, CHARLES BISHOP died.

48. Further, as a direct, proximate, and foreseeable result of the negligence of the Defendants as aforestated:

  a. JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, are entitled to recover for the estate of the deceased the loss of support and services of the decedent from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

  b. JULIA BISHOP, the decedent's natural mother has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain and suffering, loss of companionship, and protection.

WHEREFORE, Plaintiffs, JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, respectfully demand judgment against the Defendants, HOFFMAN-LA ROCHE, INC. and ROCHE LABORATORIES, INC., in the

sum in excess of Seventy Million Dollars ($70,000,000) plus costs of this suit and for any and all such other and further relief as this Court deems equitable, just, and sustainable under law.

## COUNT II – WRONGFUL DEATH – STRICT LIABILITY

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through and including 43 above as if set forth in full, and further state:

49. The Defendants were and are sellers engaged in the business of selling the product which is the subject matter of this Complaint, to wit: Accutane.

50. The product was expected to reach and did reach the user or consumer without substantial changes in the condition in which it was sold.

51. The product when sold by the Defendants was in a defective condition, unreasonably dangerous to the user or consumer due to defects in the design and/or manufacture of the product.

52. CHARLES BISHOP was within the scope of persons who would use and have used the product.

53. The Defendants are therefore strictly liable to the Plaintiffs for any mental and physical harm and injury to CHARLES BISHOP. More specifically, as a direct and proximate result of the defective and unreasonably dangerous condition of Accutane, CHARLES BISHOP died.

54. Further, as a direct, proximate, and foreseeable result:

   a. JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, are entitled to recover for the estate of the deceased the loss of support and services of the decedent from the date of injury to the date of death, loss of

net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

  b.  JULIA BISHOP, the decedent's natural mother has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain and suffering, loss of companionship, and protection.

WHEREFORE, Plaintiffs, JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, respectfully demand judgment against the Defendants, HOFFMAN-LA ROCHE, INC. and ROCHE LABORATORIES, INC., in the sum in excess of Seventy Million Dollars ($70,000,000) plus costs of this suit and for any and all such other and further relief as this Court deems equitable, just, and sustainable under law.

## COUNT III – WRONGFUL DEATH – BREACH OF EXPRESS WARRANTIES

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through and including 43 above as if set forth in full, and further state:

55.  The Defendants expressly warranted that Accutane could be used according to the instructions on the label without injury to the Plaintiff's decedent.

56.  The express warranties of Defendants were breached in that the product was not, in fact, properly labeled, formulated, or manufactured and did cause injury and death to decedent as packaged and sold.

57.  Defendants' breach of its express warranties was a direct, proximate, and foreseeable cause of decedent's death, a result of which:

  a.  JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, are entitled to recover for the estate of the deceased the

loss of support and services of the decedent from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

  b. JULIA BISHOP, the decedent's natural mother has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain and suffering, loss of companionship, and protection.

WHEREFORE, Plaintiffs, JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, respectfully demand judgment against the Defendants, HOFFMAN-LA ROCHE, INC. and ROCHE LABORATORIES, INC., in the sum in excess of Seventy Million Dollars ($70,000,000) plus costs of this suit and for any and all such other and further relief as this Court deems equitable, just, and sustainable under law.

### COUNT IV – WRONGFUL DEATH - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through and including 43 above as if set forth in full, and further state:

58. In manufacturing, labeling, promoting, distributing, marketing, selling, and placing in the stream of interstate commerce the drug Accutane, the Defendants impliedly warranted that the same was merchantable and fit for the ordinary purposes for which such products are used.

59. Accutane was not merchantable in that, as manufactured, it caused unanticipated injury to recipients.

60. Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of decedent's death, as a result of which:

a.  JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, are entitled to recover for the estate of the deceased the loss of support and services of the decedent from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

b.  JULIA BISHOP, the decedent's natural mother has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain and suffering, loss of companionship, and protection.

WHEREFORE, Plaintiffs, JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, respectfully demand judgment against the Defendants, HOFFMAN-LA ROCHE, INC. and ROCHE LABORATORIES, INC., in the sum in excess of Seventy Million Dollars ($70,000,000) plus costs of this suit and for any and all such other and further relief as this Court deems equitable, just, and sustainable under law.

### COUNT V – WRONGFUL DEATH – NEGLIGENT MISREPRESENTATION/CONCEALMENT

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through and including 43 above as if set forth in full, and further state:

61.  Defendants had sole access to material facts regarding Accutane's risk of causing depression, suicide, psychosis and other psychiatric disorders, and by virtue of their superior knowledge, had a duty to use due care to accurately disclose to physicians, and the public at large, including the Plaintiff and Plaintiff's decedent, their knowledge, and to otherwise be truthful and accurate regarding the psychiatric complications associated with the product, the content of labeling, and the thrust of their marketing activities.

-14-

62. The Defendants made numerous false representations and/or concealed accurate information and failed to use due care concerning the above matters, as herein above set forth, prompted by their financial and corporate interest in encouraging physicians to promote and patients to consume Accutane.

63. Defendants knew or should have known the true facts concerning the dangerous psychiatric complications of Accutane and the Plaintiff and Plaintiff's decedent did reasonably and justifiably rely upon the material misrepresentations made by the Defendants to physicians relying upon the misrepresentations of the Defendants, whereby Defendants breached the duties owed as hereinabove set forth.

64. Defendants' negligent misrepresentation, concealment and non-disclosure, as aforesaid, was the direct and proximate cause of decedent's death, a result of which:

    a. JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, are entitled to recover for the estate of the deceased the loss of support and services of the decedent from the date of injury to the date of death, loss of net accumulations beyond death and medical and funeral expenses due to decedent's injuries and death; and/or

    b. JULIA BISHOP, the decedent's natural mother has been and will continue to be deprived of the support and services of the decedent and has suffered and will continue to suffer mental pain and suffering, loss of companionship, and protection.

WHEREFORE, Plaintiffs, JULIA BISHOP and KAREN JOHNSON, as Co-Personal Representatives of the ESTATE OF CHARLES BISHOP, respectfully demand judgment against the Defendants, HOFFMAN-LA ROCHE, INC. and ROCHE LABORATORIES, INC., in the

sum in excess of Seventy Million Dollars ($70,000,000) plus costs of this suit and for any and all such other and further relief as this Court deems equitable, just, and sustainable under law.

## JURY DEMAND

PLAINTIFFS HEREIN DEMAND A TRIAL BY JURY.

> KRUPNICK CAMPBELL MALONE ROSELLI
>  BUSER SLAMA HANOCK McNELIS
>  LIBERMAN & McKEE, P.A.
> 700 S.E. 3 Avenue
> Courthouse Law Plaza, Suite 100
> Ft. Lauderdale, FL 33316
> (954) 763-8181
> (954) 763-8292 (Fax)
>
> BY: _____
>     Michael J. Ryan, Esquire
>     Florida Bar No. 975990
>
> and
>
> David Affinito, Esquire
> DELL'ITALIA, AFFINITO & SANTOLA
> 18 Tony Galento Plaza
> Orange, NJ 07050
> (973) 672-8000
> (973) 672-8215 (Fax)